11-1380-pr
Brown v. Graham

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of March, two thousand twelve.

PRESENT:   RALPH K. WINTER,
                    REENA RAGGI,
                              *Circuit Judges*,
                    JED S. RAKOFF,
                              *District Judge*.[*]

-----------------------------------------------------------------------
GENEO BROWN,

                              *Plaintiff-Appellant*,

                    v.                                                    No. 11-1380-pr

HAROLD D. GRAHAM, Superintendent, Auburn
Correctional Facility, DAWSON BROWN, Deputy
Superintendent of Administration, Auburn Correctional
Facility, DONALD SAWYER, Executive Director,
Central New York Psychiatric Center, HAROLD
MEYERS, Forensic Unit Chief, Auburn Correctional
Facility, JOHN F. EXNER, Correction Officer, Auburn
Correctional Facility, RAYMOND HEAD, Lieutenant,
Auburn Correctional Facility, CHARLES C. THOMAS,
Correction Officer, Auburn Correctional Facility,

-----

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

RICHARD SHARPLES, Nurse, Auburn Correctional Facility, CHRISTOPHER PERRY, Sergeant, Auburn Correctional Facility, JOHN CULKIN, Director of Mental Health Services, New York State Department of Correctional Services, TIMOTHY MCCARTHY, Captain, Auburn Correctional Facility,

*Defendants-Appellees*.[**]

------------------------------------------------------------------------

FOR APPELLANT: Geneo Brown, *pro se*, Great Meadow Correctional Facility, Comstock, New York.

FOR APPELLEES: Barbara D. Underwood, Solicitor General, Denise Hartman, Victor Paladino, Assistant Solicitors General, *for* Eric T. Schneiderman, Attorney General of the State of New York, Albany, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*; Andrew T. Baxter, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 31, 2011, is AFFIRMED.

Geneo Brown, a pro se state prisoner, appeals from an award of summary judgment in favor of defendants on his claims pursuant to 42 U.S.C. §§ 1983, 1985–86, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1. We review a grant of summary judgment de novo, and we will reverse "only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[**] The Clerk of Court is directed to amend the official caption as shown above.

2

On de novo review, we conclude that defendants were entitled to summary judgment substantially for the reasons stated in Magistrate Judge Baxter's thorough report and recommendation, which the district court adopted over Brown's timely objection. See Brown v. Graham, No. 07-CV-1353 (FJS/ATB), 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), adopting Brown v. Graham, No. 07-CV-1353 (FJS/ATB), 2010 WL 6428251 (N.D.N.Y. Mar. 30, 2010) (report and recommendation).

1.    Procedural Due Process

Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless. See Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003). "Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures." Id. (internal citations omitted). While Brown asserts that defendants Graham, Meyers, Sawyer, and Culkin failed to comply with state procedural requirements in responding to Brown's grievances regarding his mental health classification, he does not claim that he was thereby deprived of any substantive liberty interest. Thus, the due process claims against these defendants fail as a matter of law.

Brown further contends that defendants Exner, Head, and Sharples violated due process by (1) denying him a kosher lunch on June 9, 2007;[1] (2) placing him in isolation in

---

[1] Insofar as Brown suggests in his brief that this deprivation lasted through June 16, 2007, there is no record evidence to support that suggestion. To the contrary, it appears that Brown refused food during this self-imposed hunger strike period.

the infirmary for five days in June 2007 due to Brown's first hunger strike; (3) placing him in keeplock for ten days in June 2007; (4) depriving him of access to packages, commissary items, and the telephone for fourteen days in June 2007; and (5) placing him in isolation in the infirmary for five days in September 2007 due to Brown's second hunger strike and suicide threat, all without following various state-mandated processes. Even assuming the alleged procedural non-compliance, Brown's due process claim fails because the record evidence does not support a reasonable finding that these deprivations, even considered together, "imposed atypical and significant hardship on [Brown] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); accord Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004). With regard to Brown's ten-day keeplock period and his two five-day periods of infirmary isolation, we have noted "that restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009). Though Brown argues that the conditions of his isolation were more severe than ordinary isolation conditions, see id. at 133–34, no record evidence supports that argument.

Brown also argues that defendant Thomas, as well as defendant Graham in his supervisory capacity, violated due process by mishandling a videotape that Brown received in his legal mail. We need not decide whether Brown had federally-protected liberty or property interests in the videotape or its proper handling. See Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (noting that prisoner claiming due process violation must demonstrate protected liberty or property interest); accord Shakur v. Selsky, 391 F.3d

4

106, 118 (2d Cir. 2004). There is no record evidence indicating that Thomas himself mishandled or lost the videotape.

2. Eighth Amendment

In support of his Eighth Amendment claims against defendants Perry and Sharples, as well as against defendants Graham and Brown in their supervisory capacities, Brown contends that the conditions of his September 2007 confinement in the infirmary deprived him of the "minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 298 (1991); accord Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). As with Brown's procedural due process claim targeting the same period of medical isolation, these claims fail for lack of supporting evidence. Moreover, there is no evidentiary support for Brown's claim of deliberate indifference to serious medical needs by defendant Sharples and by defendant Brown in his supervisory capacity. See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (setting forth standard for deliberate indifference to medical needs claims); accord Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

3. Fourth Amendment

Brown argues that defendants Perry and Sharples, as well as defendants Graham and Brown in their supervisory capacities, violated his right to be from unreasonable searches and seizures when, following Brown's September 2007 hunger strike and suicide threat, they seized Brown from his cell, strip searched him, and placed him in infirmary isolation. Insofar as Brown suggests that the alleged strip search was unreasonable, the claim fails because there is no record evidence that the search was anything other than a routine procedure

5

justified by the state's legitimate interest in maintaining prisoner safety and prison security. See Covino v. Patrissi, 967 F.2d 73, 78–79 (2d Cir. 1992). Insofar as Brown contends that his seizure during this incident was unreasonable, even assuming that a prisoner has any Fourth Amendment right not to be seized and transported from one place to another within a state prison facility, there is no record evidence that this particular seizure was not justified by the same legitimate interest in safety and security.

4.     RLUIPA

Finally, Brown contends that defendant Exner's refusing Brown a kosher lunch on June 9, 2007, "impose[d] a substantial burden on" Brown's exercise of his religious beliefs. 42 U.S.C. § 2000cc-1(a); see Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010). Even assuming that RLUIPA authorizes damages claims against individual defendants such as Exner, cf. Sossamon v. Lone Star State of Texas, 560 F.3d 316, 331 (5th Cir. 2009) (holding that "RLUIPA does not create a cause of action against defendants in their individual capacities"), aff'd on other grounds, Sossamon v. Texas, 131 S. Ct. 1651 (2011), there is nothing in this record that could support a reasonable jury conclusion that Exner's failure to provide Brown a kosher meal on a single occasion rose to the level of a substantial burden on Brown's religious freedom.

5.     Conclusion

In sum, Brown's procedural due process, Eighth Amendment, Fourth Amendment, and RLUIPA claims all fail as a matter of law. The claims fare no better when recast by Brown as conspiracy claims, see 42 U.S.C. §§ 1985–86, nor when relabeled by Brown as

6

retaliation claims.  See Friedl v. City of New York, 210 F.3d 79, 85–86 (2d Cir. 2000);

Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (noting that prisoner claims of

retaliation are "prone to abuse").[2]  For those reasons, the judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[2] Brown's brief references his Americans with Disabilities Act retaliation claim, but makes no arguments regarding the district court's dismissal of that claim for lack of evidence.  We therefore deem any such challenge to be waived.  See LoSacco v. City of Middletown, 71 F.3d 88, 93 (2d Cir. 1995) ("[W]e need not manufacture claims of error for an appellant proceeding pro se . . . .").  In any case, there is no record support for Brown's argument that defendants regarded him as disabled.